## LEVI L. CORYELL v. STATE OF NEBRASKA.

FILED NOVEMBER 13, 1912. No. 17,641.

Information: SUFFICIENCY: OPERATION OF AUTOMOBILE. An information which under three counts in reference to a single transaction charges in the first count that the defendant permitted his infant son, under 16 years of age, to operate defendant's automobile on the highway, and in the second count charges that defendant permitted said infant son to drive said automobile past a vehicle drawn by a team of horses, without reasonable caution, and without calling to or giving any sound to indicate to the driver of said horses a desire to pass the same, and in the third count charges that the defendant permitted said son to drive said automobile past said team of horses at a swift rate of speed, and return to the center of the road within less than 30 feet from said team of horses and said spring wagon, will not sustain a conviction upon either count, where the evidence clearly establishes the fact that at the time charged the defendant himself had actual control of and was operating said automobile.

ERROR to the district court for Nemaha county: JOHN B. RAPER, JUDGE. *Reversed.*

*M. S. McIninch* and *Ernest F. Armstrong,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton, contra.*

HAMER, J.

The plaintiff in error, Levi L. Coryell, hereinafter

called the defendant, was informed against in the district court for Nemaha county and charged with: (1) Permiting his infant son to operate his, defendant's, automobile on the public highway. (2) Permitting his said son to drive past a team without using reasonable care. (3) Permitting his said son to drive past a team without using reasonable care, and to return to the road less than 30 feet in advance of said team. The particular acts charged against the defendant are all shown to have occurred at the same time, and therefore constitute one transaction. There was a trial to a jury, and the defendant was found guilty on each count, and was on each count sentenced to pay a fine of $5. The defendant asks a reversal of the judgment upon five distinct grounds, only one of which we deem it necessary to consider, and that is that "the verdict is contrary to the evidence."

The facts as they appear are sworn to by the defendant and his little son, Leland, and their testimony is not controverted in any material matter, so far as it relates to the operation of the automobile by the defendant himself. The little son is shown by the evidence to have been only 11 years old, and there is testimony that he had his hands on the "steering wheel"; but he testified, and no one disputes him, that "I was sitting there and I had my hands here; I was sitting here, and papa had his hand right in under my hand, he had it between these two fingers; he had the throttle, he could operate the throttle, he had it right between his fingers there." He also testifies that his father was guiding the car, and that it was not possible for him (the little boy) sitting in the automobile seat to reach the pedals. No one says it was.

The defendant testified that when he saw the team, after turning the corner, he blew the whistle several times, but "I presumed that they would (hear the whistle), and I took the right side, which placed me on the right between Whitmore's team and the fence. I proceeded along that line, thinking they would give me their right of the road, and as we proceeded, it put me in this 'V'

shape. The gutter I seen was deep. The dirt was washed in from the culvert below, and I thought I could get in the gutter; but, when I got to this gate, the ditch became immediately abrupt, I having pulled to the right, and about that time I was about even with the team, my machine was about even with the team, I either had to pull in to that gate or that ditch, or put the team over on the other side of the road. It was the only thing I could do in the emergency, and I did it. Q. State whether or not you were driving the car or Leland driving the car. A. I had my hand on the lever and a hand on the throttle, my left foot was on the pedal, my left hand was reached under the throttle, I have a device which is about the size of that pencil, beneath the wheel, I had the mechanics pin that right close to the wheel so that I could reach it and govern the throttle. My throttle is pinned so I can drive it when Leland is at the wheel. He had both hands on the wheel at the time." He then testified that his hand was under the boy's hand and that he had hold of the throttle. "Q. Tell the jury whether or not, in that condition, you can control that car. A. Yes, sir. Q. Tell the jury whether or not you were controlling that car. A. Yes, sir; I was." He then testified that the ditch became suddenly abrupt, and that he had to make a turn or go into the ditch, and that the ditch was four feet deep.

The evidence clearly seems to show that whatever was done towards the driving and control of the automobile was done by the father, and not by his little son, and therefore that the defendant is not guilty of permitting his son to do the three several acts alleged to be done in the three counts of the information. The evidence is insufficient to sustain the judgment. This court held in *Garfield v. Hodges & Baldwin*, 90 Neb. 122: "A verdict, so clearly wrong as to induce the belief on the part of the reviewing court that it must have been found through passion, prejudice, mistake, or some means not apparent in the record, will be set aside and a new trial awarded."

It may be urged that the automobile turned into the

road after passing the team less than 30 feet in advance of it, and therefore that the defendant is guilty of that offense in any event. It should be remembered, however, that there is no charge that the defendant did it. The charge is that he permitted his infant son to do it, and the evidence does not support that charge. The thing forbidden by the statute (Ann. St. 1911, sec. 6234) is permitting "a person under 16 years of age or an intoxicated person to operate a motor vehicle." The charge in the third count is: "The said Levi L. Coryell, then and there being, did wilfully and unlawfully permit his infant son, Leland Coryell, a boy under 16 years of age, to drive said automobile past the said team of horses and said spring wagon," and "wilfully and unlawfully return to the center of the road within less than 30 feet of said team of horses and said spring wagon." Seemingly the charge alleges a violation of sections 6234, 6236, Ann. St. 1911. The former relates to the permitting of one under 16 to drive, and the latter to the manner of driving. As the driving is alleged to have been done by the little boy, it is fairly to be presumed that the returning to the center of the road was intended to be alleged as done by the little boy, all under the permission of his father. If so, and it appears from the evidence that the little boy only had his hands upon the "steering wheel," and could not reach and did not touch the pedals, and that he had nothing to do with the throttle, but that the father had hold of the "steering wheel," and could and did reach the pedals, and also had his hand upon the throttle, and that he actually controlled the car, and what the little boy did was only a make believe—a sort of play or pretense—something not uncommon in the lives of children who seek to imitate the actions of their parents and others, then there is no evidence to sustain the verdict and judgment, and the same should not be allowed to stand.

The most that any of the witnesses for the state testified to in the case is that they saw Leland's hands on the "steering wheel." They did not all testify to that. No

one of them testified to seeing his feet on the pedals or his fingers on the throttle. It would seem not to be possible to operate such an automobile as this one was without doing these things. In order to operate such a car, it would seem to be necessary to have the feet on the pedals and to have hold of the throttle, and the little boy was too small, as the testimony shows, to reach the pedals with his feet while sitting in the seat. There is no dispute about the fact that the defendant was in the car at the time and sitting with his little son. Some of the witnesses were of the opinion that the defendant did not have his hand on the "steering wheel," while others said that they did not know, but they did not testify to the other necessary things to show that the defendant was not operating the machine. In operating a motor vehicle, it would seem that the person who does so has charge of the vehicle and is directing its course without the interference or control of another person. The defendant did not place his little son in charge of the car and start him out on the road. It is such an act as that that the statute is calculated to prohibit. It could not have been contemplated that a man should be punished who was driving his car, because his little boy placed his hands on the "steering wheel."

The charge in the first count is that the defendant permitted his infant son to operate his automobile on the public highway. The mere operation of the machine is itself the offense. The fact alleged that the defendant permitted his infant son to drive past a team without using reasonable care does not state something that is forbidden by law, except as the defendant is forbidden to permit his infant son to *operate* a motor vehicle. There is no penalty to be inflicted upon the defendant because he permits his infant son to drive past a team without using reasonable care. Driving past a team without using reasonable care might be charged as an offense against the defendant, but the defendant is not forbidden to allow his son to do so, except as he is forbidden to allow his son, if he be less than 16 years old, to operate his automobile. The second

Coryell v. State.

count therefore charges nothing to be tried if the first count is disposed of. The third count attempts to charge, and does charge, that the defendant permitted his son to drive past a team without using reasonable care, and to return to the road less than 30 feet in advance of said team. That act is not forbidden, so far as it might prohibit the father from permitting his son to drive past a team and to return to the road less than 30 feet in advance of the team. It is only forbidden under the general provision that the father cannot permit his son to operate his automobile on the public highway. The things attempted to be charged in the second and third counts are not offenses. The thing that the father is forbidden to do is to permit his infant son to "operate a motor vehicle." Whether the infant son drives straight in the road, whether he drives past a team and whether he returns to the road less than 30 feet in advance of the team are all matters along the same line, and immaterial, except as they show, if proved, that the defendant permitted his son to operate a motor vehicle. If the father permitted his son to do the things attempted to be alleged in the second and third counts, then he is punishable because he permitted the son to *operate the automobile,* and not because of what the son did in going around the team or in returning to the road. It is the *permission* given to the son to *operate the machine* that makes the offense. It is not the *way* that the son operates the machine that makes the offense, but the mere fact that he does operate it.

Instructions 3 and 5 are possibly misleading upon the ground that the charges contained in the second and third counts do not justify them. As no complaint is made of these instructions we will not consider them. The evidence is not sufficient to sustain the verdict. The judgment is

REVERSED.

REESE, C. J., and ROSE, J., dissent upon the ground that the evidence was conflicting and the verdict of the jury should stand.